DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Toledo Municipal Court which awarded plaintiff-appellant, Rodney Taylor, $250 as liquidated damages after a trial to the bench. From that judgment, appellant now raises the following assignment of error:
 {¶ 2} "The trial court erred in finding the liquidation of damages clause of the parties [sic] contract enforceable and reasonable and by failing to award plaintiff/appellant damages on his count for negligence."
 {¶ 3} The facts of this case are as follows. On April 2, 1999, appellant entered into an agreement with defendant-appellee, Guardian Alarm of Ohio, Inc. ("Guardian"), to purchase a home alarm and monitoring system. Appellant paid $847.50 for the system and $27.23 per month thereafter as a monitoring fee. On the front page of the contract, immediately below the customer approval line, which appellant signed, is the following statement in bold letters: "ATTENTION IS DIRECTED TO THE WARRANTY AND OTHER CONDITIONS ON REVERSE SIDE." The reverse side of the contract then reads in relevant part: "1. COMPANY NOT AN INSURER AND LIQUIDATED DAMAGES. It is understood and agreed by the [sic] and between the parties hereto that Company is not an insurer. Insurance, if any, will be obtained by the Subscriber. Charges are based solely upon the value of the services provided for and are unrelated to the value of the Subscriber's property or the property of others located in Subscriber's premises. The amounts payable by the Subscriber are not sufficient to warrant Company assuming any risk of consequential or other damages to the Subscriber due to Company's negligence or failure to perform, including, but not limited to loss or damage which may be occasioned by or be caused by the improper working of any equipment or connecting circuit or by or because of the failure of an alarm to be received at the central station, or by or because of the failure to notify the police department pursuant to the instruction of or Agreement with the Subscriber, or by or because of any delay in dispatching an agent to the premises to investigate an alarm. The Subscriber does not desire this contract to provide for the liability of Company and Subscriber agrees that Company shall not be liable for loss or damage due directly or indirectly to any occurrence or consequences therefrom, which the service is designed to detect or avert. From the nature of the services to be performed, it is impractical and extremely difficult to fix the actual damages, if any, which may proximately result from the failure on the part of Company to perform any of its obligations herein, or the failure of the system to properly operate with the resulting loss to the Subscriber. If Company should be found liable for loss or damage due to a failure on the part of Company or its system, in any respect, this liability shall be limited on an amount equal to the aggregate of six (6) monthly payments, or the sum of $250.00, whichever sum shall be less, as liquidated damages and not as a penalty, and this liability shall be exclusive. The provisions of this paragraph shall apply in the event of loss or damage, irrespective or [sic] cause or origin, results directly or indirectly to person or property from the performance or non-performance of the obligations set forth by the terms of this contract or from negligence, active or otherwise, of Company, its agents or employees. *** That in the event the Subscriber desires the Company to assume greater liability for performance of its services hereunder, an additional sum of money shall be charged commensurate with the responsibility and an additional rider shall be attached to this Agreement setting forth the additional liability of the Company." In addition, the following statement appeared on the front of the parties' contract:
 {¶ 4} "CUSTOMER ACKNOWLEDGES THAT HE IS AWARE THAT NO ALARM SYSTEM CAN GUARANTEE PREVENTION OF LOSS; THAT HUMAN ERROR ON THE PART OF GUARDIAN OR THE MUNICIPAL AUTHORITIES IS ALWAYS POSSIBLE, AND THAT SIGNALS MAY NOT BE RECEIVED IF THE TRANSMISSION MODE IS CUT, INTERFERED WITH, OR OTHERWISE DAMAGED."
 {¶ 5} On February 9, 2001, Guardian received a low battery signal emanating from appellant's home. As a result of storm conditions that existed on that date, Guardian prioritized its responses to various signals received from customers. Low battery signals were considered lower priority than intruder alarms. Appellant was out of town from February 9, 2001 until February 10, 2001. Upon his return to his residence, appellant found that the power lines to his home had been cut and that numerous articles of clothing and other personal effects were missing from his home. While appellant was out of town, no intruder alarm signal was ever generated from appellant's home to Guardian.
 {¶ 6} The Alarm User Guide, which was given to appellant but which was not part of the parties' contract, provides in pertinent part: "***Guardian will attempt to contact the premise first for investigation of the low battery signal." It is undisputed that upon receiving the low battery signal, Guardian did not attempt to contact either appellant's premises or appellant himself.
 {¶ 7} On July 10, 2001, appellant filed an action against Guardian in the court below. Appellant asserted that Guardian's failure to properly follow its procedures set forth in its Alarm User Guide and its failure to investigate the low battery signal amounted to both negligence and a breach of contract. The case proceeded to a trial to the bench, at which appellant and several other witnesses testified. On September 30, 2002, the court filed findings of fact, conclusions of law, a decision and judgment entry in favor of appellant. In relevant part, the court determined that Guardian had breached the contract by failing to inform appellant of the low battery signal. The court further determined, however, that the liquidated damages clause of the parties' contract was valid and enforceable and that, accordingly, damages were limited to $250. The court therefore awarded appellant a judgment against Guardian of $250. It is from that judgment that appellant now appeals.
 {¶ 8} In his sole assignment of error, appellant contends that the trial court erred in failing to award him damages on his claim of negligence and erred in finding the liquidated damages clause of the parties' contract enforceable.
 {¶ 9} We will first address the negligence issue. It is well established that "`*** a party to [a] contract can only be liable in tort, in relation to the contract, where some positive duty imposed by law has been breached by the alleged negligent conduct of one of the parties to the contract.'" Nationwide Mut. Fire Ins. Co. v. Sonitrol,Inc. of Cleveland (1996), 109 Ohio App.3d 474, 485, quoting Am. StatesIns. Co. v. Honeywell, Inc. (Mar. 1, 1990), Cuyahoga App. No. 56552. "*** [T]he mere omission to perform a contract obligation is never a tort unless the omission is also the omission to perform a legal duty." Bowmanv. Goldsmith Bros. Co. (App. 1952), 63 Ohio Law Abs. 428, 431. "***[W]illful or wanton misconduct on the part of a party to a contract, [however,] can result in the imposition of tort liability." Am. StatesIns. Co. v. Honeywell, Inc., supra, citing Royal Indemn. Co. v. BakerProtective Services, Inc. (1986), 33 Ohio App.3d 184; Hine v. DaytonSpeedway Corp. (1969), 20 Ohio App.2d 185.
 {¶ 10} In the present case, the only relationship between the parties was that established by the contract and Guardian owed no duty to appellant outside of those duties set forth in the contract. Accordingly, the trial court did not err in failing to award appellant damages on his claim of negligence because appellant had no recognizable claim of negligence. We further note that appellant did not allege any willful or wanton misconduct on the part of Guardian in his complaint.
 {¶ 11} Appellant next asserts that the trial court erred in concluding that the liquidated damages clause of the parties' contract was valid and enforceable. In Samson Sales, Inc. v. Honeywell, Inc.
(1984), 12 Ohio St.3d 27, 28, the Supreme Court of Ohio set forth the law in Ohio regarding liquidated damages clauses in contracts: "While some jurisdictions have rejected such contract provisions on policy grounds, clauses in contracts providing for reasonable liquidated damages are recognized in Ohio as valid and enforceable. *** However, reasonable compensation for actual damages is the legitimate objective of such liquidated damage provisions and where the amount specified is manifestly inequitable and unrealistic, courts will ordinarily regard it as a penalty. *** Whether a particular sum specified in a contract is intended as a penalty or as liquidated damages depends upon the operative facts and circumstances surrounding each particular case ***." (Citations omitted.) The court then, in the syllabus, set forth the following test for determining the validity of a liquidated damages clause: "Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof."
 {¶ 12} In Samson, the court was presented with a situation in which a burglar alarm, installed by the defendant, failed to transmit a burglar alarm signal. As a result, plaintiff alleged losses in the amount of $68,303 for merchandise that was stolen from plaintiff's pawn shop. Plaintiff paid $1,500 for the alarm system installation and $150 per month thereafter as a maintenance fee. The contract between the parties included a liquidated damages clause which limited the defendant's liability to $50 in the event of the system's failure to properly operate. The Ohio Supreme Court applied the test set forth above and held that the liquidated damages clause was unenforceable. In particular, the court determined that the damages would be readily ascertainable, that the sum of $50 was manifestly disproportionate to either the consideration paid or the possible damage that reasonably could be foreseen from the failure of the alarm system, and that it was beyond comprehension that the parties intended that damages in the amount of $50 would follow the breach of the contract. The court further noted that the liquidated damages clause was printed in minute type.
 {¶ 13} Appellant asserts that Samson is controlling and that it demands a finding that the liquidated damages clause in the present case is unenforceable. While we find the Samson case to be controlling, we must conclude that given the facts of this case, the liquidated damages clause at issue is valid and enforceable. With regard to the first prong, we cannot say that the value of appellant's property in the event of a system failure would be certain as to amount or easily proven. Unlike the property involved in Samson, where jewelry and firearms were stolen from a pawn shop, appellant's property and personal effects consisted primarily of used clothing. The liquidated damages clause itself demonstrates the parties' acknowledgement of the difficulty of ascertaining the value of appellant's property by stating: "From the nature of the services to be performed, it is impractical and extremely difficult to fix the actual damages, if any, which may proximately result from failure on the part of Company to perform any of its obligations herein ***."
 {¶ 14} We further must agree with the trial court that the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties. The liquidated damages amount was $250. Although appellant asserted a claim for $15,000, he did not establish the value of his lost property at the trial below. Appellant did present the testimony of a retailer who testified as to the value of appellant's clothing when he bought it. In addition, an invoice produced by appellant indicated that he had purchased clothing at various times totaling $6,155 from New York Collections. There was no evidence, however, as to the value of the clothing once it had been worn.
 {¶ 15} Finally, we must agree with the trial court's conclusion that the contract was consistent with the conclusion that it was the intention of the parties that damages in the amount of $250 should follow the breach thereof. The contract is clearly written, is not in minute print and expressly sets forth the duties and obligations of the parties. Moreover, had appellant desired or expected Guardian to assume liability greater than $250, he could have negotiated for a greater amount pursuant to the express terms of the contract. He chose not to do so.
 {¶ 16} Accordingly, the trial court did not err in finding that the liquidated damages clause of the parties' contract was enforceable and in awarding appellant $250 pursuant to that contract. The sole assignment of error is not well-taken.
 {¶ 17} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Toledo Municipal Court is affirmed. Court costs of this appeal are assessed to appellant.
 JUDGMENT AFFIRMED.